UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| GARY IVAN TERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-365 (ESH) |
| | ) | |
| U.S. SMALL BUSINESS ADMINISTRATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

The Court has before it the motion by defendants U.S. Small Business Administration ("SBA") and SBA Administrator Karen Mills to dismiss the *pro se* complaint filed by Gary Ivan Terry.[1] In this action, plaintiff seeks to (1) hold unlawful and set aside agency action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, by requiring defendants to reverse their 2000 decision declaring plaintiffs' two SBA-guaranteed small business loans to be in default, and (2) obtain declaratory and injunctive relief "to prevent further infringement of [plaintiff's] property rights and violations of 605(a) of the Contract Disputes Act" ("CDA"), 41 U.S.C. §§ 601-613. (Compl. ¶ 9; *see also id.* at 107.) For the reasons discussed herein, defendants' motion to dismiss will be granted for lack of subject matter jurisdiction,[2] and

---

[1] Although the complaint initially suggested that "Scat, Inc." was also a plaintiff (*see* Compl. ¶ 5 (referring to "Plaintiff Scat")), plaintiff Terry's case caption and subsequent filings indicate that he is the sole plaintiff. However, to the extent that Scat, Inc. is a plaintiff in this action, "a corporation may appear in the federal courts only through licensed counsel," and thus, it is not permitted to appear *pro se*. *See Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201-02 (1993).

[2] Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, but some of their arguments actually pertain to this Court's subject matter jurisdiction. "It is axiomatic that subject matter jurisdiction may not be waived, and that courts

1

plaintiff's other outstanding motions will be denied as moot.[3]

## BACKGROUND

Plaintiff, a resident of North Carolina, is the president and chief executive officer of Scat, Inc. ("Scat"), a North Carolina corporation that plaintiff formed in 1994. (Compl. ¶¶ 3-4, 33.) Scat manufactures above-ground storage systems for petroleum substances. (*Id.* ¶ 4.) Less than a year later, plaintiff incorporated 1103 Norwalk Street, L.L.C. under North Carolina law. (*Id.* ¶ 35.) Plaintiff financed both of these enterprises through small business loans obtained from, respectively, North Carolina-based secured creditors Branch, Bank & Trust, Co. ("BB&T") and RBC Bank ("RBC"). (*Id.* ¶¶ 33, 35.) The SBA guaranteed 85% of both loans, which were also secured by plaintiff's personal guarantees. (*Id.*)

In July 1995, the U.S. General Services Administration ("GSA") awarded a procurement contract to plaintiff and Scat. (Compl. ¶ 36.) On September 8, 1997, a GSA contracting officer "issue[d] a final decision establishing a claim [against plaintiff and Scat] for a contract debt of $545,161.20" for overpayment on duplicate orders ("the overpayment claim").[4] (*Id.* ¶ 45.) This claim determination allegedly failed to inform plaintiff "of [his] due process rights to appeals under § 605(a)" of the CDA. (*Id.*) In October 1999, the United States sued plaintiff and Scat in the U.S. District Court for the Western District of Missouri in a civil action arising from the

---

may raise the issue *sua sponte*. Indeed, we *must* raise it, because while arguments in favor of subject matter jurisdiction can be waived by inattention or deliberate choice, we are forbidden – as [courts] of limited jurisdiction – from acting beyond our authority, and no action of the parties can confer subject-matter jurisdiction upon a federal court." *NetworkIP, LLC v. F.C.C.*, 548 F.3d 116, 120 (D.C. Cir. 2008) (internal quotation marks and citations omitted).

[3] Plaintiff has moved for leave to file an amended complaint. As discussed herein, even if plaintiff were to amend his complaint in the manner he proposes, these amendments would not cure the deficiencies in his claims. *See infra* Analysis, Section III.

[4] The complaint also alleges that another contract debt claim was made against plaintiff earlier that year. (*See* Compl. ¶ 40.)

purported overpayments. (*Id.* ¶¶ 67-68.) *See* Complaint, *United States v. Scat, Inc.*, No. 99-CV-1053 (W.D. Mo. Oct. 29, 1999). Plaintiff, who was then represented by counsel, raised the affirmative defense that the government's dispute was subject to the CDA and, consequently, subject to the exclusive jurisdiction of the Court of Federal Claims. (Compl. ¶ 80.)[5] On June 21, 2000, GSA notified plaintiff that it was cancelling his contract. (*See id.* ¶ 108.) On June 27, plaintiff, the SBA, and BB&T agreed to a six-month deferment on plaintiff's loans at his request. (*Id.* ¶ 191.)

In July 2000, federal grand jury proceedings were instituted in the Western District of Missouri. (Compl. ¶¶ 120-133; *see also* Pl.'s Mem. of P. & A. in Supp. of Mot. for Leave to File Am. Compl. ("Pl.'s Mem. for Leave to File") at 2.) Plaintiff alleges that federal prosecutors engaged in a variety of misconduct to procure the indictment, including the concealment of "critical 'exculpatory' material evidence," such as the fact that the GSA contracting officer failed to notify plaintiff of his administrative appellate rights, which in turn, according to plaintiff, rendered the overpayment determination invalid and therefore "not a proper basis" upon which to prosecute plaintiff. (Compl. ¶¶ 128-133.) On August 3, 2000, plaintiff and Scat were indicted on 19 counts of false claims, theft of government property, false statements, and obstruction of justice. (*Id.* ¶ 134.) *See United States v. Terry*, No. 00-CR-308 (W.D. Mo. filed Aug. 3, 2000). According to plaintiff, the indictment was also "based on the merits of the determinations made within the [GSA] contracting officer's final administrative decision or order" related to the overpayment claim, and thus the prosecutors indicted him without probable cause. (*Id.* ¶¶ 135-136.) Plaintiff also alleges that his privately retained defense attorney colluded with the

---

[5] The government voluntarily dismissed its civil action against plaintiff in 2003. *See* Order at 1, *Scat*, No. 99-CV-1053 (W.D. Mo. Mar. 25, 2003), *aff'd*, 100 F. App'x 602, 602 (8th Cir. 2004) (*per curiam*) (affirming grant of government's voluntary dismissal and dismissal of Terry's motion to seek judicial review of administrative decision).

3

prosecutor to "devise[] a scheme to conceal[]" the contracting officer's supposed failure to apprise plaintiff of his right to administratively appeal the overpayment determination. (*Id.* ¶ 155; *see also id.* ¶ 153.)

On September 26, 2000, plaintiff appeared with his attorney before a magistrate judge and pled guilty to one count of false statements and one count of obstruction of justice. (*See* Compl. ¶¶ 158, 177, 182.) He alleges that as with the indictment, "[t]he evidence in support of said pleas of guilty was based upon the merits of" the GSA contracting officer's overpayment determination. (*Id.* ¶ 183.) In October, the SBA informed BB&T and RBC that plaintiff had been indicted. (*Id.* ¶¶ 192, 199.) Following plaintiff's plea, BB&T requested the SBA's concurrence to issue a demand letter to Scat "[d]ue to the indictment, and the past due status of SCAT's September 27, 2000 payment . . . ." (*See* Pl.'s Opp'n to Mot. to Dismiss ("Pl.'s Opp'n"), Ex. 1.) Shortly thereafter, the loans were declared to be in default. (*See* Compl. ¶ 201.) BB&T and RBC, "with the knowledge and concurrences of SBA, foreclosed on all of their assets," leading plaintiff to file for bankruptcy protection. (*Id.* ¶ 203.)

On September 26, 2001, plaintiff appeared with his attorney before the district judge for sentencing. (Compl. ¶ 235.) He was sentenced to 15 months' incarceration followed by three years of supervised release and ordered to pay restitution. *See* Judgment, *Terry*, No. 00-CR-308 (W.D. Mo. Oct. 5, 2001). (*See also* Compl. ¶¶ 256, 259.) On June 20, 2002, the district court denied plaintiff's motion under 28 U.S.C. § 2255 to vacate or correct his sentence and to withdraw his plea, and the U.S. Court of Appeals for the Eighth Circuit denied his request for a certificate of appealability. *See* Order at 1, *Terry*, No. 02-CV-64 (W.D. Mo. May 29, 2002), *appeal dismissed*, No. 02-2637 (8th Cir. Oct. 4, 2002).[6] (*See also* Compl. ¶¶ 260-271

---

[6] Plaintiff filed at least one other unsuccessful appeal with the U.S. Court of Appeals for the Eighth Circuit. *See, e.g.*, Order at 1, *Terry*, No. 02-CV-64 (W.D. Mo. Aug. 7, 2003)

4

(discussing "post-conviction petition").) From 2001 through 2009, plaintiff also contacted his elected officials to seek redress for his alleged grievances. (Compl. ¶¶ 272-317.)

On March 5, 2010, plaintiff filed the instant 375-paragraph *pro se* complaint, a motion for appointment of counsel, and a motion for an emergency temporary restraining order, declaratory judgment and preliminary or permanent injunction ("TRO motion"). Counts I through VI allege unlawful agency action under 5 U.S.C. § 706(1) and (2) and seek the invalidation of the SBA's determination in 2000 that plaintiff's two SBA-guaranteed small business loans were in default, as well as the reinstatement of those loans to active status. (*See id.* ¶¶ 330, 337, 345, 352, 359, 366.) Count VII "seek[s] declaratory judgment and injunctive relief that Defendants['] decisions to declare [plaintiff's] two (2) SBA's guaranteed small business loans to be in default [were] *ultra vires* and therefore void *ab initio*." (*Id.* ¶ 375.)

On March 9, defendants moved to dismiss the complaint and opposed the TRO motion. On March 10, the Court issued an order in accordance with *Fox v. Strickland*, 836 F.2d 507 (D.C. Cir. 1988), advising plaintiff to respond to defendants' motion to dismiss by March 26, 2010.[7] On March 12, the Court issued an order denying the TRO motion and the motion for appointment of counsel because plaintiff had not shown a likelihood of success on the merits or irreparable injury. (*See* Mar. 12, 2010 Order on TRO Mot.) On March 17, plaintiff moved to recuse the United States Attorney's Office for the District of Columbia. On March 22, plaintiff moved to vacate the order denying his TRO motion. On March 24, plaintiff moved for leave to file an amended complaint.

---

(denying all pending motions for lack of jurisdiction), *aff'd*, No. 03-3223 (8th Cir. Dec. 8, 2003), *pet. for reh'g denied*, No. 03-3223 (8th Cir. Jan. 15, 2004)*, cert. denied*, 542 U.S. 929 (2004) (*mem.*).

[7] Plaintiff filed that opposition on March 19, 2000.

5

## ANALYSIS

I.  **STANDARD OF REVIEW**

Under Fed. R. Civ. P. 12(b)(1), which governs motions to dismiss for lack of subject matter jurisdiction, "a plaintiff bears the burden of establishing by a preponderance of the evidence that the Court possesses jurisdiction." *Martens v. United States*, No. 05-CV-1805, 2007 WL 2007580, at *1 (D.D.C. July 6, 2007). "[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Marsoun v. United States*, 591 F. Supp. 2d 41, 43 (D.D.C. 2008) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

"In determining whether a complaint fails to state a claim [under Rule 12(b)(6)], [courts] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [courts] may take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624 (D.C. Cir. 1997). "'[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.'" *Atherton v. Dist. of Columbia Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). "'So long as the pleadings suggest a "plausible" scenario to show that the pleader is entitled to relief, a court may not dismiss.'" *Id.* (quoting *Tooley v. Napolitano*, 556 F.3d 836, 839 (D.C. Cir. 2009) (edits omitted). However,

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has

> acted unlawfully. Where a complaint pleads facts that are merely consistent with
> a defendant's liability, it stops short of the line between possibility and
> plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks and citations omitted).

Additionally, "even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" *Atherton*, 567 F.3d at 681-82 (quoting *Iqbal*, 129 S. Ct. at 1950).

The pleadings of *pro se* parties "[are] to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (internal quotation marks and citations omitted). Nonetheless, "[a] pro se complaint, like any other, must present a claim upon which relief can be granted by the court." *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981); *see also McNeil v. United States,* 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted as to excuse mistakes by those who proceed without counsel.").

## II. PLAINTIFF'S CLAIMS ARE BARRED

### A. Statute of Limitations

The Court concludes that plaintiff's claims are barred by the six-year statute of limitations established by 28 U.S.C. § 2401(a), thereby depriving the Court of subject matter jurisdiction. Section 2401(a) provides that "[e]xcept as provided by the Contract Disputes Act of 1978, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within

three years after the disability ceases."[8]  28 U.S.C. § 2401(a).  "'Section 2401 is a general catchall statute that applies to all civil actions against the government,'" *W. Va. Highlands Conservancy v. Johnson*, 540 F. Supp. 2d 125, 138 (D.D.C. 2008) (quoting *Felter v. Norton*, 412 F. Supp. 2d 118, 124 (D.D.C. 2006)), *appeal dismissed*, No. 08-5153, 2009 WL 377083 (D.C. Cir. Jan. 30, 2009) (*per curiam*), including those under the APA, which provides for judicial review of agency action at 5 U.S.C. § 704.  Citing § 2401(a), the D.C. Circuit has explained that "[u]nless another statute prescribes otherwise, a suit challenging final agency action pursuant to section 704 must be commenced within six years after the right of action first accrues.  The right of action first accrues on the date of the final agency action." *Harris v. F.A.A.*, 353 F.3d 1006, 1009-10 (D.C. Cir. 2004) (internal citations and footnotes omitted).

Here, the agency action that plaintiff is challenging is "the agency's decision to declare [his] two (2) SBA guaranteed small business loans to be in default . . . ." (Pl.'s Opp'n at 13.)  That declaration of default occurred in October 2000.  Plaintiff's argument that this decision was based on a defect in the underlying administrative proceeding regarding the overpayment claim is beside the point.  (*See id.* at 13-14.)  His right to challenge the agency's decision regarding the loans' default status accrued in October 2000.  *See Harris*, 353 F.3d at 1009-10.  The limitations period ended six years later in October 2006, and therefore plaintiff's filing in 2010 of an APA claim (or other claims for relief) comes too late.[9]

---

[8] If the Contract Disputes Act were to govern plaintiff's claims, the Court would still be required to dismiss the complaint for lack of subject matter jurisdiction.  As plaintiff is aware (*see* Compl. ¶ 80), "[w]hen the CDA applies to a claim, its procedures provide the exclusive remedy for that dispute, and this Court lacks jurisdiction to hear it," because exclusive jurisdiction would lie with the Court of Federal Claims.  *See Navab-Safavi v. Broad. Bd. of Governors*, 650 F. Supp. 2d 40, 67-68 (D.D.C. 2009); 28 U.S.C. §§ 1346(a)(2), 1491(a)(2).

[9] Plaintiff has long known he can seek judicial review of agency actions, having attempted to do so on at least one previous occasion.  *See Scat*, 100 F. App'x at 602 (affirming "dismiss[al] [of] Terry's motion to seek judicial review of an administrative decision").

"[W]hen a party seeks to sue the United States pursuant to a waiver of sovereign immunity," the statute of limitations is jurisdictional and must be "'strictly construed.'" *W. Va. Highlands Conservancy*, 540 F. Supp. 2d at 138 (quoting *Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 55 (D.C. Cir. 1987)). "Section 2401(a) is one such Congressional waiver of sovereign immunity." *Id.* "Moreover, when a statute of limitations has been regarded as jurisdictional, 'it has acted as an absolute bar [that cannot] be overcome by the application of judicially recognized exceptions . . . such as waiver, estoppel, equitable tolling, fraudulent concealment, the discovery rule, and the continuing violations doctrine.'" *Id.* (quoting *Felter*, 412 F. Supp. 2d at 122 (citations omitted)). There is, therefore, no basis to suggest that the Court can ignore § 2401(a)'s jurisdictional bar.[10] Accordingly, plaintiff's claims are barred by the statute of limitations and must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. *See id.* at 143 (granting motion to dismiss APA claims for lack of jurisdiction because they were untimely under § 2401(a)); *see also Victor Foods, Inc. v. Crossroads Econ. Dev. of St. Charles County, Inc.*, 977 F.2d 1224, 1226 (8th Cir. 1992) (*per curiam*) (affirming jurisdictional dismissal of suit against SBA because it was barred under § 2401(a)).

**B.** *Heck v. Humphrey*

In the alternative, the Court concludes that this action is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), and its progeny. In *Heck*, the Supreme Court held that "in order to recover damages . . . for . . . harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a plaintiff suing under 42 U.S.C. § 1983 "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a

---

[10] Nor does the fact "[t]hat plaintiff has been incarcerated for some or all of this time . . . constitute a 'legal disability' that tolls the statute of limitations" under the plain text of § 2401(a). *Allen v. U.S. Dep't of Educ. Default Resolution Group*, No. 08-CV-2128, 2009 WL 649578, at *2 (N.D. Tex. Mar. 12, 2009).

state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87 (footnote and citation omitted). *Heck* explained that in such a suit, "the district court must consider whether a judgment in favor of the plaintiff would *necessarily imply the invalidity of his conviction or sentence*; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487 (emphasis added). Permitting such suits to go forward only if the conviction has been invalidated "avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." *Id.* at 484 (edits and internal quotation marks omitted).

Plaintiff counters that *Heck* is inapplicable simply because it did not "involve a legal situation where, as here, the Court[] must look to" the APA. (Pl.'s Opp'n at 7.) This argument is not persuasive. Courts have extended *Heck*'s rationale beyond the context of § 1983 to a variety of situations where a plaintiff has been convicted of a federal crime and later files a civil action which, if successful, would necessarily imply the invalidity of the plaintiff's conviction. *See, e.g.*, *White v. U.S. Probation Office*, 148 F.3d 1124, 1126 (D.C. Cir. 1998) (dismissing Privacy Act claim "[b]ecause a judgment in favor of White on his challenge to the legal conclusions in his presentence report would necessarily imply the invalidity of his sentence, which has not been invalidated in a prior proceeding"); *Derrow v. Bales*, No. 06-CV-137, 2007 WL 1511997, at *3 (E.D. Tex. May 22, 2007) (dismissing amended complaint under *Heck* where all three counts were brought under APA and Privacy Act), *appeal dismissed*, *Derrow v. Unidentified*, 265 F. App'x 330 (5th Cir. 2008). These cases apply with equal force to the particular facts of this case,

10

even though plaintiff seeks only injunctive relief.

Plaintiff alleges that his loans "were placed into default as a direct and proximate causation" of the indictment (Compl. ¶ 297), which in turn was allegedly based upon a GSA contracting officer's defective overpayment determination. (*See, e.g.*, *id.* ¶ 194.) As a result, his claims require the Court to decide whether that overpayment determination was valid. A decision that the overpayment determination was invalid would necessarily imply that there was, as plaintiff contends, no "proper basis" upon which to prosecute and convict him. (*Id.* ¶¶ 133, 184.) For example, he alleges that the evidence supporting his guilty plea was "based upon the merits of" the overpayment determination. (*Id.* ¶ 183.) He also alleges that the prosecutors' misrepresentations about this and other material facts misled the district court into accepting plaintiff's plea and convicting him. (*See id.* ¶¶ 184, 189, 238, 259.)

Therefore, despite plaintiff's arguments to the contrary, his claims necessarily require this Court to step impermissibly "into the shoes of the court which originally imposed sentence in his case." Order at 1, *United States v. Terry*, No. 03-CR-299 (M.D.N.C. Oct. 6, 2008) (denying, *inter alia*, motion to compel Western District of Missouri's U.S. Attorney to undertake specific performance of plaintiff's allegedly breached plea agreement), *aff'd*, 334 F. App'x 576 (4th Cir. 2009), *cert. denied*, No. 09-8332, 2010 WL 596797 (Feb. 22, 2010) (*mem.*); *see also In re Terry*, 336 F. App'x 399, 399 (4th Cir. 2009) (*per curiam*) (denying request for writ of mandamus to compel district court to vacate its order refusing to compel specific performance of his plea agreement).[11] However, as recognized by other courts that have confronted similar claims by

---

[11] In August 2003, jurisdiction over plaintiff's criminal case was transferred to the Middle District of North Carolina. *See* Transfer of Jurisdiction, *United States v. Terry*, No. 03-CR-299 (M.D.N.C. Aug. 11, 2003). In 2006, while on supervised release in North Carolina, he was charged, convicted, and re-sentenced for seven months for violating the terms of that release. *See* Judgment, *Terry*, No. 03-CR-299 (M.D.N.C. May 15, 2006). He unsuccessfully appealed that decision in 2007, arguing "that his underlying conviction in Missouri is invalid, and

Mr. Terry, "this is *not* the appropriate court for him to litigate questions [underlying] the propriety of his original conviction." Order at 1, *Terry*, No. 03-CR-299 (M.D.N.C. Oct. 6, 2008) (emphasis added). He "has not shown that his conviction has been reversed, expunged, invalidated or otherwise called into question . . . ." *Derrow*, 2007 WL 1511997, at *3. Nor is there any indication that he could do so; in 2009, he filed a second § 2255 petition in the Western District of Missouri, which was denied for lack of jurisdiction because the Eighth Circuit had not authorized the consideration of a second or successive petition. *See* Order at 1-2, *Terry v. United States*, No. 09-CV-454 (W.D. Mo. June 15, 2009), *certificate of appealability denied*, 09-2918 (8th Cir. Nov. 2, 2009), *cert. denied*, No. 09-8927, 2010 WL 373804 (Mar. 22, 2010) (*mem.*). "Because a judgment in favor of [plaintiff] on his challenge . . . would necessarily imply the invalidity of his sentence, which has not been invalidated in a prior proceeding," *White*, 148 F.3d at 1126, it is barred under *Heck* and should also be dismissed on this ground as well. *Cf. Derrow*, 2007 WL 1511997, at *3 (dismissing APA and Privacy Act claims under alternate grounds of either *Heck* or statute of limitations).

### III. PLAINTIFF'S PROPOSED AMENDMENTS WOULD BE FUTILE

Plaintiff has moved for leave to file an amended complaint but did not submit a copy of the proposed amended complaint as required under Local Civil Rule 15.1.[12] Nonetheless, his motion for leave demonstrates that his amendments would not cure the deficiencies in his claims, because those deficiencies arise not from a failure to plead sufficient facts but from the facts *as*

---

therefore the district court lacked jurisdiction to revoke his supervised release." *United States v. Terry*, 234 F. App'x 82, 84 (4th Cir. 2007) (*per curiam*) (affirming conviction and sentence imposed for violating terms of supervised release), *cert. denied*, 128 S. Ct. 2958 (2008) (*mem.*), *reh'g denied*, 129 S. Ct. 20 (2008) (*mem.*).

[12] Defendant concedes that at the time of plaintiff's filing, his motion was unnecessary because he was capable of amending by right. (*See* Def.'s Opp'n to Pl.'s Mot. for Leave to File Am. Compl. at 1-2.)

*already pled*.

Plaintiff seeks to amend in order to (1) plead "fraudulent concealment"; (2) name the Attorney General and the Acting Counsel of the Department of Justice's Office of Professional Responsibility "in order to enjoin or prevent the Defendants' on-going violations of § 605(a) of the [CDA]"; (3) plead that defendants deprived him of his constitutional and statutory rights; (4) "state a cause of action or an implied right of action" that the CDA applied to the filing of the indictment against him, that CDA § 605(a) was violated, and this violation is reviewable under the APA; and (5) argue that a "private cause of action thus exists" under APA § 702. (Pl.'s Mot. for Leave to File Am. Compl. at 2-3.) The memorandum in support of his motion clarifies that all of these proposed amendments, as well as "all substantive counts of the Indictment," were based on the alleged "failure of the contracting officer to inform [plaintiff] of [his] due process rights to appeal the agency's final administrative decision" regarding the overpayment claim. (Pl.'s Mem. for Leave to File at 4; *see also id.* at 7-10.) Therefore, plaintiff does not "propose any new or different allegations that would . . . change[] [this Court's] analysis of the jurisdictional issues," *Victor Foods*, 977 F.2d at 1227 (affirming denial of plaintiff's "futile 'motion' to amend its complaint"), nor would these allegations have any effect on the Court's conclusion that *Heck* bars his claims.

## CONCLUSION

For the foregoing reasons, defendants' motion is granted, the complaint is dismissed **WITH PREJUDICE**, and plaintiff's outstanding motions are denied as moot. This Memorandum Opinion is accompanied by a separate order.

                                                  /s/
                                    ELLEN SEGAL HUVELLE
                                    United States District Judge

DATE: March 29, 2010